Efrem Lawrence, OSB 160471
elawrence@theellawfirm.com
E.L. Law Firm
5 Centerpointe Dr. #400
Lake Oswego, Or. 97035
Ph: 503-217-6116
Fax:503-954-3319

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT COOPER, an individual | Case No.: 3:23-cv-00202-MO |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | |
| MEREDITH CORPORATION, dba KPTV & KPDX, a foreign business corporation | 1. Age Discrimination/Harassment ORS 659A.030 et seq |
| Defendant. | **[Prayer: $50,000-$999,999]** |
| | **JURY TRIAL DEMANDED** |

Plaintiff, Robert Cooper, was employed by Defendant, Meredith Corporation dba KPTV & KPDX, from on or about February 25, 1985, until he was unlawfully terminated by Defendant on February 10, 2021. Plaintiff alleges as follows:

PAGE 1 – AMENDED COMPLAINT AND JURY DEMAND

# JURISDICTION, VENUE, AND PARTIES

1.

Defendant Meredith Corporation ("MEREDITH") is a Des Moines, Iowa corporation. MEREDITH was acquired by IAC and merged with Dotdash to form Dotdash Meredith. MEREDITH'S broadcast assets were acquired by Gray Television.

2.

MEREDITH is an employer and is a person pursuant to ORS 659A.001(9).

3.

MEREDITH employs one or more persons in the State of Oregon and is an employer pursuant to ORS 659.001(4)(a).

4.

At the time of Plaintiff's employment, MEREDITH'S local place of business was in Washington County, Oregon and it conducted regular and sustained business activities throughout the State of Oregon.

5.

At all material times alleged herein, MEREDITH employed twenty-five (25) or more people in the State of Oregon.

///

///

**STATEMENT OF FACTS**

6.

ORS 659A.820(3) states that complaints alleging violations of ORS 659A.030 must be filed "no later than five years after the occurrence of the alleged unlawful practice". Information found to be outside any timing constraints should be considered as background to determine whether there is a pattern of discriminatory disposition.

7.

Plaintiff was born on March 16, 1957, over 60 years of age, and the only employee of such age holding his position/job at MEREDITH.

8.

Plaintiff was hired by MEREDITH as a retail sales agent on February 25, 1985.

9.

In July 2013, MEREDITH directed Plaintiff's manager Steven Hodges to spend less time with Robert because Cooper doesn't understand technology, he doesn't even know his computer that well, and he is old.

10.

In July of 2018, MEREDITH ordered Plaintiff to take Microsoft Office classes which were not required of other account executives.

11.

In May of 2019, MEREDITH constructed assessments which Plaintiff was required to pass as a condition of employment.

12.

In June of 2019, MEREDITH modified their sales contest rules to disqualify a new business entry from Plaintiff.

13.

In July of 2019, MEREDITH provided a performance evaluation which indicated, "We'd like to see Bob perform better in our sales contest. He did not perform well in new business contests but made a better effort in our latest sales contest." In this performance evaluation, Plaintiff's new account goal was set at "at least $1,000 per month per station." Plaintiff was determined by management to have "done what was asked as far as the minimum spend on each station."

14.

Plaintiff's performance evaluation for Fiscal Year 2018-2019 indicated that he had "fully met expectations" yet he needed "improvement on New Direct, Digital, and KPDX."

15.

After Plaintiff passed his Microsoft Excel assessment designed by MEREDITH management, Plaintiff was required to continue on to take Microsoft Word and PowerPoint classes that other account executives were not required to take, as a

condition of employment, over the course of the 2019-2020 fiscal year from July 1, 2019 to June 30, 2020.

16.

On February 27, 2020, Plaintiff was determined to have improved performance between quarter three and four in digital performance, to have maintained performance levels in new business, and to have decreased performance in number of accounts, direct business performance, and highest billing.

17.

On February 28, 2020, COVID-19 community spread was confirmed in Oregon.

18.

On March 4, 2020, Plaintiff was notified of the expectations of his soon to be effective new role of Account Development Consultant (ADC) and told to "specifically focus on development of new business, both broadcast and digital" with a focus on "accounts that are capable of spending 100k or more over the course of a year."

19.

On March 15, 2020, Oregon closed schools and limited gatherings over 250 people.

///

///

20.

On March 23, 2020, Oregon issued a statewide stay-at-home order.

21.

On April 1, 2020, Plaintiff assumed the new role of ADC in a 3-person team.

22.

On April 28, 2020, MEREDITH sent out an email notifying its staff that because of COVID-19 and mitigation measures such as the stay-at-home order, their revenue pacing was 40% lower than it had been the year before.

23.

On May 14, 2020, Oregon began allowing the first counties to re-open after the statewide stay-at-home order.

24.

On May 21, 2020, Plaintiff was notified that he would be put on a Performance Improvement Plan ("PIP").

25.

On May 26, 2020, Plaintiff was put on a PIP which identified that he had only secured two $100 orders of new direct business since March 26, 2020, after the stay-at-home order was in effect.

///

///

Case 3:23-cv-00202-AN    Document 10    Filed 02/16/23    Page 7 of 15

26.

On May 28, 2020, Plaintiff notified their employees that their revenue pacing was 36.3% lower than the prior May.

27.

On June 30, 2020, MEREDITH noted that Plaintiff had begun reaching the minimum requirements of the PIP: to present 5 CNA meeting notes and 5 PowerPoint proposals each week over the requirement of $3k per month, which would be reviewed and critiqued by management.

28.

Then, MEREDITH management directed Plaintiff to meet a standard of 50% of his team of 3's new business since he was entitled to 45% of the new business commissions.

29.

Having met minimum sales goals, the nature of criticism shifted to the perceived quality of Plaintiff's PowerPoint presentations and computer skills.

30.

For Plaintiff's performance evaluation goals in fiscal year 2019-2020 he was directed to generate $60k in MNI sales annually, $132k in new business for KPTV, $48k for KPDX, and $276k in digital sales.

31.

He was rated as performing "fairly normal" and doing an "adequate job with his existing accounts" while having overall billing down 14% prior to April 1, 2020.

32.

This results in $180k in new business revenue, $276k in digital sales without distinction between new or returning business, and $60k in MNI sales without distinction between new or returning business.

33.

In September 2020, MEREDITH changed Plaintiff's PIP goals to for fiscal year 2020-2021, which was already three months underway, to make "$2.5 million in annual Asks in Rumple; $300,000 new business revenue; $100,000 new digital revenue.

34.

This results in $400,000 in new business revenue with no criteria for MNI sales and no credit for returning business, with only nine months to meet a goal that was not established at the beginning of the fiscal year.

35.

In October 2020, Plaintiff raised $14,470 of his team's $28,785 in TV new business or 5% of his newly imposed $300,000 TV business goal, with no new digital.

36.

By December 2020, Plaintiff was determined to have reached $77,585 or 26% of his $300,000 TV new business goal, and $1,000 or 1 % of his $100,000 digital goal imposed two months prior.

37.

By the end of January 2021, Plaintiff had reached $84,885 or 28% of his $300,000 goal, with $2,000 or 2% of his $100k new digital goal, excluding the new business of $10,000 for two months with Concrete Cap obtained that month, which would have raised Plaintiff to 32% of his $300,000 sales goal obtained in the four months since the goal was imposed.

38.

On February 10, 2021, Plaintiff was discharged from employment citing these sales performance deficiencies.

39.

On March 24, 2021, Plaintiff contacted the Civil Rights Division concerning allegations of discrimination.

40.

On June 18, 2021, Civil Rights Division staff conducted an intake interview with Plaintiff regarding the allegations.

41.

On September 23, 2021, Complainant filed a signed charge alleging discrimination.

42.

On September 23, 2022, The Bureau of Labor and Industries, Civil Rights Division, found substantial evidence of an unlawful practice based on age, in that Respondent subjected Complainant to different terms, conditions, and privileges of employment and discharged Complainant from employment in violation of ORS 659A.030(1)(a) & (b).

43.

On September 23, 2022, The Bureau of Labor and Industries issued Plaintiff a 90 day right to sue letter.

## DAMAGES

44.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered noneconomic damages in the form legally known as "garden variety" emotional distress, injury to reputation, inconvenience and interference with normal and usual activities, and humiliation such that a reasonable person under similar circumstances would suffer and request an award of compensatory damages in an amount to be determined by a jury, and in an amount of/not to exceed $539,999. ORS 659A.885.

45.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer economic damages, including, but not limited to, loss of earnings, front pay, loss of earning capacity, loss of benefits, loss of job opportunities and other employment benefits which likely continue to accrue in an amount to be determined at the time of trial and in an amount of/not to exceed $460,000 together with interest and the amount necessary to offset the income tax consequences of the award pursuant to ORS 659A.885 and/or special damages under common law.

46.

Plaintiff also seeks equitable relief including a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the as alleged in this Complaint.

47.

Plaintiff places Defendant on notice of Plaintiff's intent to move the Court to amend this Complaint to seek punitive damages and to seek discovery of all relevant financial documents from Defendant.

///

///

48.

Plaintiff also seeks reasonable attorney's fees and costs in an amount to be proven at trial pursuant to ORS 659A.885(1) and/or ORS 20.107 and/or other applicable statute.

## FIRST CLAIM FOR RELIEF
Age Discrimination-ORS 659A.030(1)(a-b)
(Against All Defendants)

49.

Plaintiff restates and incorporates by reference paragraphs 1-43, inclusive.

50.

Defendant, acting through its agents/employees, subjected Plaintiff, a Caucasian man over 60, to age-based discrimination, harassment, and hostile work environment and failed to take reasonable steps necessary to prevent this discrimination and harassment from occurring.

51.

Defendant discriminated against Plaintiff on the basis of his age in that Plaintiff was treated different and/or unequal than co-workers who were substantially younger than him. Plaintiff was subjected to different terms, conditions, and privileges, of his employment, including being forced to take courses, and pass management created tests while others were not, unwarranted discipline and termination, as alleged in detail above.

52.

In perpetrating the actions described in the above paragraphs, Defendant violated Oregon Revised Statute 659A.030(1)(a) & (b), by subjecting Plaintiff to

discrimination, disparate treatment, unlawful termination, and/or offensive work environment based on his age, causing Plaintiff to suffer damages.

53.

Plaintiff requests an award for damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 44-48, inclusive, supra.

## **JURY DEMAND FOR RELIEF**

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

1. Economic damages, as alleged;

2. Noneconomic damages, as alleged;

3. Reasonable costs and attorney's fees per statute, as alleged;

4. Reinstatement, if feasible, and a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the basis as alleged herein;

5. For prejudgment and post-judgment interest as appropriate and allowed by law;

6. On all claims, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the time;

7. Upon motion, punitive damages, as alleged; and

8. All such other relief as this Court may deem proper.

Dated: February 16, 2022.  **E.L. LAW FIRM**

*s/ Efrem Lawrence*

Efrem Lawrence, OSB #160471
elawrence@theellawfirm.com
Tel. 503-217-6116
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I certify that on February 16, 2023, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** on the party or parties listed below as follows:

- X  Via CM / ECF Filing
- X  Via First Class Mail, Postage Prepaid
- ☐  Via Email
- ☐  Via Personal Delivery
- ☐  Via Facsimile

Kjersten Turpen, OSB 025920
Florance Z. Mao, OSB 144804
Ogletree, Deakins, Nash, Smoak & Stewart, P.C
KOIN CENTER
222 SW Columbia Street, Suite 1500
Portland, Or 97201

*s/ Efrem Lawrence*

Efrem Lawrence, OSB #160471
elawrence@theellawfirm.com
Tel. 503-217-6116
Attorney for Plaintiff